JOSEPH E. MASON,                        )
                                        )
             Defendant-Appellant,       )
                                        )
             v.                         )        No. 1:12-cv-00525
                                        )
CHARLES M. IVEY, III, CHAPTER 7         )
TRUSTEE FOR THE ESTATE OF JAMES         )
EDWARDS WHITLEY,                        )
                                        )
             Plaintiff-Appellee.        )
_____     )

FAYE SWOFFORD,                          )
                                        )
             Defendant-Appellant,       )
                                        )
             v.                         )        No. 1:12-cv-00528
                                        )
CHARLES M. IVEY, III, CHAPTER 7         )
TRUSTEE FOR THE ESTATE OF JAMES         )
EDWARDS WHITLEY,                        )
                                        )
             Plaintiff-Appellee.        )
_____     )

ROBERT P. SWOFFORD,                     )
                                        )
             Defendant-Appellant,       )
                                        )
             v.                         )        No. 1:12-cv-00529
                                        )
CHARLES M. IVEY, III, CHAPTER 7         )
TRUSTEE FOR THE ESTATE OF JAMES         )
EDWARDS WHITLEY,                        )
                                        )
             Plaintiff-Appellee.        )
_____     )

```
LUCIAN VICK,                      )
                                  )
          Defendant-Appellant,    )
                                  )
          v.                      )      No. 1:12-cv-00531
                                  )
CHARLES M. IVEY, III, CHAPTER 7   )
TRUSTEE FOR THE ESTATE OF JAMES   )
EDWARDS WHITLEY,                  )
                                  )
          Plaintiff-Appellee.     )
_____ )
```

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

   This matter arises from adversary proceedings brought by Chapter 7 Trustee Charles M. Ivey, III ("Trustee") in the involuntary bankruptcy case of Debtor James Edwards Whitley ("Whitley" or "Debtor"). Before the court is the Joint Motion to Withdraw Reference to the United States Bankruptcy Court filed by Defendants Joseph E. Mason, Faye Swofford, Robert P. Swofford, and Lucian Vick ("Defendants"). (Doc. 10 (12-cv-00525, 12-cv-00528, 12-cv-00529); Doc. 7 (12-cv-00531).) The Trustee has responded (Doc. 14 (12-cv-00525, 12-cv-00528, 12-cv-00529); Doc. 12 (12-cv-00531)) and Defendants have replied (Doc. 15 (12-cv-00525, 12-cv-00528, 12-cv-00529); Doc. 13 (12-cv-00531)). The matter is ready for decision. For the reasons set forth below, the motion will be denied.

## I. BACKGROUND

   On March 8, 2010, a group of unsecured creditors, which did

2

not include Defendants, filed an involuntary petition for relief under Chapter 7 of the United States Bankruptcy Code against Whitley. As observed by the Bankruptcy Court, "James Edward[s] Whitley (the 'Debtor') was the sole shareholder and principal officer of South Wynd Financial, Inc., a corporation purportedly in the business of invoice funding and receivables financing ('factoring'). In reality, the Debtor's factoring business was non-existent, fictitious, and amounted to a Ponzi scheme." In re Whitley, Bankr. No. 10-10426C-7G, 2012 WL 1268670, at *1 (Bankr. M.D.N.C. Apr. 13, 2012). Pursuant to 28 U.S.C. § 157 and the order of reference, the bankruptcy case was referred from this court to the Bankruptcy Court, where it proceeds under Chapter 7.

Defendants were investors in Whitley's scheme, and they timely filed proofs of claim in the Bankruptcy Court: (1) Defendant Mason, a claim for $1,330,000; (2) Defendant Faye Swofford, a claim for $528,538.00; Defendant Robert Swofford, a claim for $865,000.00; and Defendant Vick, a claim for $658,700.00.

In July 2011, the Trustee objected to the proofs of claim and brought adversary proceedings against each Defendant, asserting fraudulent transfer claims based on transfers to Defendants pursuant to the alleged Ponzi scheme. In addition to claims for constructive fraud, the Trustee's complaint alleged

3

causes of action for (1) actual fraud pursuant to Bankruptcy Code § 548(a)(1)(A)[1] (Count I) and (2) actual fraud under state law, N.C. Gen. Stat. § 39-23.1 et seq., pursuant to Bankruptcy Code § 544(b)(1)[2] (Count II). Each Defendant filed an answer, raised various defenses,[3] and demanded a jury trial. Important here, Defendants also challenged the Bankruptcy Court's jurisdiction over the adversary proceedings, specifically the right to enter a final judgment on the fraudulent transfer claims in Counts I and II of the complaints, in light of the Supreme Court's decision in Stern v. Marshall, -- U.S. --, 131 S. Ct. 2594 (2011).[4]

The Bankruptcy Court invited the parties to either consent to its jurisdiction to enter a final judgment in the adversary proceedings or brief why it lacked jurisdiction under Stern;

---

[1] Section 548(a)(1)(A) allows a trustee to avoid any transfer of an interest of a debtor in property or any obligation "that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became . . . indebted."

[2] Section 544(b)(1) allows a trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title."

[3] Defenses included good faith receipt of payments from Whitley and an argument the Defendant was the "net loser" from the Ponzi scheme.

[4] The Bankruptcy Court dismissed the Trustee's claims for constructive fraudulent transfer in the adversary proceedings against Faye Swofford, Mason, and Vick because the pleadings demonstrated that they had been paid less than their investment.

4

Defendants chose the latter. On April 13, 2012, the Bankruptcy Court issued a memorandum opinion in which it concluded that the fraudulent transfer claims were core proceedings and that each Defendant filed a proof of claim for monies loaned. The court concluded that, in light of the filed proofs of claim, it could "enter final judgment on the Plaintiff's claims because it is necessary to decide the fraudulent transfer claims in order to allow or disallow the Defendants' proofs of claim." _In re Whitley_, 2012 WL 1268670, at *2.

Defendants filed for leave to appeal to this court. This court questioned whether a motion to withdraw the reference, as opposed to an interlocutory appeal, was the appropriate vehicle to present the issue to this court. After a hearing, the court denied without prejudice appellants' joint motion for leave to appeal, and the matter has proceeded on the instant motions to withdraw the reference. (Docs. 12 at 4 (12-cv-00525, 12-cv-00528, 12-cv-00529), 9 (12-cv-00531).) The court directed the parties to address whether withdrawal of the reference was either required or advisable, including the impact, if any, of the Supreme Court's decision in _Stern_ on the Bankruptcy Court's authority to enter final judgments in the adversary proceedings.

Defendants now argue that the adversary proceedings must or, alternatively, should be withdrawn because under _Stern_ the Bankruptcy Court lacks constitutional authority to enter final

5

judgment on the Trustee's fraudulent transfer claims, which are state law claims between private parties. The Trustee contends that the impact of Stern is narrow and that Defendants have submitted themselves to entry of a final judgment by filing proofs of claim. The Trustee further argues that his power to recover fraudulent transfers "unquestionably invokes the Bankruptcy Code and, unlike the common law state claim at issue in Stern, cannot be resolved outside the claims resolution process."

## II. ANALYSIS

A motion for withdrawal of the reference is governed by 28 U.S.C. § 157(d), which provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The first sentence of section 157(d) provides for permissive withdrawal, while the second sentence addresses mandatory withdrawal.

Defendants urge mandatory withdrawal on the grounds that although the fraudulent transfer claims are core proceedings, the Bankruptcy Court lacks constitutional authority to enter a final judgment under Stern and the Bankruptcy Court therefore

lacks the statutory authority to enter proposed findings of fact and conclusions of law under § 157(c)(1).[5] The Trustee contends that Stern does not apply here, but if it does, the court should rely on those cases that have held that the Bankruptcy Court retains authority to issue proposed findings of fact and conclusions of law. See, e.g., Dang v. Bank of Am., N.A., No. RDB-12-3343, 2013 WL 1683820, at *12 (D. Md. Apr. 17, 2013) ("A majority of courts considering this issue in Stern's wake have concluded that a bankruptcy court has the power to submit proposed findings of fact and conclusions of law on claims for which they cannot issue final judgments."); ACC Retail Prop. Dev. & Acquisition Fund, LLC, No. 5:12-CV-361-BO, 2012 WL 8667572, at *3 (E.D.N.C. Sept. 28, 2012) ("[A] majority of courts have found that Stern did not disturb the power of the bankruptcy court to issue proposed findings of fact and conclusions of law as to those claims over which it does not have the power to enter final judgment."); Joe Gibson's Auto World, Inc. v. Zurich Am. Ins. Co. (In re Joe Gibson's Auto

---

[5]  Section 157(c)(1), Title 28, United States Code, provides:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

7

_World, Inc._, C/A No. 7:11-2482-TMC, 2012 WL 1107763, at *2 (D.S.C. Apr. 2, 2012) (citing cases); _see also_ _Schafer v. Nextiraone Fed., LLC_, No. 1:12cv289, 2012 WL 2281828, at *4 (M.D.N.C. June 18, 2012) (reviewing cases); _Heller Ehrman LLP v. Arnold & Porter LLP_ (_In re Heller Ehrman LLP_), 464 B.R. 348, 355-56 (N.D. Cal. 2011) (considering mandatory withdrawal but concluding it did not apply because bankruptcy court could enter proposed findings of fact and conclusions of law).

The starting point for Defendants' arguments is the jurisdiction of the Bankruptcy Court. A bankruptcy court derives its jurisdiction from the district court, which has, with exceptions not relevant here, "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b); _id._ § 157(a). The manner in which a bankruptcy judge may act on a referred matter depends on the type of proceeding involved. "Bankruptcy judges may hear _and determine_ . . . all _core_ proceedings arising under title 11, or arising in a case under title 11 . . . ." 28 U.S.C. § 157(b)(2) (emphasis added). The parties agree that the Trustee's fraudulent transfer claims are defined by statute as "core" proceedings. _See_ 28 U.S.C. § 157(b)(2)(H) ("[P]roceedings to determine, avoid, or recover fraudulent conveyances" are listed

as "core" proceedings.). Thus, while the parties agree that the Bankruptcy Court has been granted statutory authority to determine the Trustee's fraudulent conveyance claims, Defendants argue that _Stern_ determined that Congress' grant was unconstitutional.

In _Stern_, the Supreme Court held that statutory authority under section 157(d) is not enough; constitutional authority must exist as well. _Stern_ arose out of a dispute over the failure to include Vickie Marshall (a/k/a Anna Nicole Smith) in the will of her deceased wealthy husband, J. Howard Marshall II. Vickie sued Marshall's son in state court, contending that the son tortiously interfered with Marshall's intent to provide for her in his will. She then filed for bankruptcy protection, and the son filed a complaint and a proof of claim seeking damages against Vickie's bankruptcy estate for alleged defamation for her public statements inculpating the son in fraud in controlling Marshall's assets. Vickie responded with a tortious interference counterclaim. The bankruptcy court granted Vickie summary judgment on the son's defamation claim and awarded her millions of dollars on her counterclaim. Following appeals to the district and appellate courts, the Supreme Court held that while the bankruptcy court had statutory authority to enter final judgment on Vickie's counterclaim under section 157(b)(2)(C) as a core proceeding, it lacked constitutional

9

authority to do so because determination of the state law claim involved the "prototypical exercise of judicial power" that defines an Article III court. 131 S. Ct. at 2615.

Importantly here, in reaching its decision, the Court in Stern considered its prior holding in Granfinanciera, S.A. v. Nordberg, 492 U.S. 33 (1989). In Granfinanciera, the Court considered "whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." 492 U.S. at 36. The Supreme Court held that although fraudulent transfer is listed as a core proceeding, "the Seventh Amendment entitles such person to a trial by jury." Id. The only way for the bankruptcy court to avoid a jury trial was to assert a "public right." The Court concluded that fraudulent conveyance actions were matters of private, not public, right because they were "quintessentially suits at common law that more nearly resemble state-law contract claims." Id. at 56. Drawing on this language, therefore, the Court in Stern held that the trustee's state law tortious interference counterclaim, like the fraudulent conveyance claim in Granfinanciera, "does not fall within any of the varied formulations of the public rights exceptions in the Court's cases." Stern, 131 S. Ct. at 2614.

Drawing on this analysis, Defendants argue that after _Stern_ the Bankruptcy Court has been deprived of the constitutional authority to decide the Trustee's fraudulent transfer claims.

**B.** **Application of _Stern_ to the Trustee's Fraudulent Transfer Claims**

The Fourth Circuit has not cited _Stern_ to date. _Stern_ has been said to have "muddied the waters of bankruptcy court jurisdiction by discussing a fraudulent conveyance action in a case that did not contain such a claim." _Miller v. Enviro Care, Inc._ (_In re Rock Structures Excavating, Inc._), No. 2:12-CV-856 TS, 2013 WL 1284969, at *5 (D. Utah Mar. 27, 2013); _see also Waldman v. Stone_, 698 F.3d 910, 918 (6th Cir. 2012) ("The law in this area has a potluck quality."); _Tyler v. Bruce Banks_ (_In re Tyler_), 493 B.R. 905, 914 (N.D. Ga. 2013) ("This confusion among the courts has arisen primarily because of the sheer complexity of _Stern's_ majority opinion."); _KHI Liquidation Trust v. Wisenbaker Builder Servs., Inc._ (_In re Kimball Hill, Inc._), 480 B.R. 894, 901 (Bankr. N.D. Ill. 2012) ("It is no surprise then that courts of all levels post-_Stern_ have attempted to reconcile _Stern's_ expressly limited holding with its expressively expansive _dicta_.").

The Trustee urges the court to follow a number of bankruptcy and district courts that have found that _Stern_ neither intended to, nor did, limit the bankruptcy court's

11

authority beyond the limited situation it addressed: the constitutionality of a specific subsection of 28 U.S.C. § 157(b)(2), that is, "counterclaims by the estate against persons filing claims against the estate." Deitz v. Ford (In re Deitz), 469 B.R. 11, 17 (9th Cir. BAP 2012) (considering applicability of nondischargeability proceedings under Bankruptcy Code § 523). As these courts note, the Supreme Court itself emphasized that its holding was a narrow one:

> We conclude today that Congress, in one isolated respect, exceeded [Article III's] limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.

Stern, 131 S. Ct. at 2620. As the majority stated, its holding would have few "practical consequences," and the Court surmised it did "not think that the removal of [such] counterclaims . . . from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute . . . ." 131 S. Ct. at 2619-20; but see First Nat'l Bank v. Crescent Elec. Supply Co. (In re Renaissance Hosp. Grand Prairie Inc.), 713 F.3d 285, 294 n.12 (5th Cir. 2013) (cautioning that "Stern's 'in one isolated respect' language may understate the totality of the encroachment upon the Judicial Branch posed by Section 157(b)(2), which enumerates a list of 'core proceedings'").

Several reasons are offered for the conclusion that <u>Stern</u> does not extend to fraudulent transfer proceedings, which are statutorily core proceedings under 28 U.S.C. § 157(b)(2)(H). First, it has been stated that "[i]n the years between <u>Granfinanciera</u> and <u>Stern</u>, the authority of bankruptcy courts to enter final judgments in fraudulent conveyance actions [remained] unchallenged." <u>In re Rock Structures Excavating</u>, 2013 WL 1284969, at *3 (internal quotations omitted).

Second, courts should be cautious in invalidating federal law on the ground that *dicta* in <u>Stern</u> might *one day* be extended to other core proceedings. As the Eighth Circuit Bankruptcy Appellate Panel stated, "[u]nless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional." <u>In re AFY, Inc.</u>, 461 B.R. 541, 547-48 (8th Cir. BAP 2012); <u>accord</u> <u>Bakst v. United States</u> (<u>In re Kane & Kane</u>), Bankr. No. 09-15556-EPK, 2013 WL 1197609, at *15 n.7 (Bankr. S.D. Fla. Mar. 25, 2013) (declining "to extend <u>Stern</u> beyond its holding" in light of Eleventh Circuit language pointing out that it is not appropriate to extrapolate from a Supreme Court decision, extending its holding in a manner inconsistent with settled circuit law); <u>Ward v. Jenkins</u> (<u>In re Jenkins</u>), Bankr. No. 12-50413, 2012 WL 6186347, at *2 (Bankr.

13

W.D.N.C. Dec. 12, 2012) (agreeing, in the context of section 157(b)(2)(H), that while the Supreme Court may hold that section 157(b)(2)(F) dealing with fraudulent conveyances unconstitutional . . . Bankruptcy courts should not invalidate a Congressional statute . . . or otherwise limit [their] authority to finally resolve other core proceedings [] simply because dicta in Stern suggests the Supreme Court may do the same down the road." (quoting In re Safety Harbor Resort and Spa, 456 B.R. 703, 718 (Bankr. M.D. Fla. 2011), and finding reasoning equally applicable to fraudulent transfer proceedings before the district court)).

Third, the holding in Granfinanciera was limited to the issue of a right to a jury trial under the Seventh Amendment and, in fact, suggested that bankruptcy courts may in fact adjudicate fraudulent transfer actions and conduct jury trials. In re Tyler, 493 B.R. at 917-19 (citing cases; see also Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.), 466 B.R. 626 (Bankr. D. Del. 2012); Walker, Truesdell, Roth & Assoc. v. Blackstone Grp., L.P., (In re Extended Stay, Inc.), 466 B.R. 188, 202 n.70 (S.D.N.Y. 2011) ("Stern does not affect the ability of the bankruptcy court to rule on state law fraudulent conveyance claims" when determining a proof of claim).

In response to these arguments, Defendants nevertheless argue that Stern applies. But even Defendants have to

14

acknowledge that <u>Granfinanciera</u>, upon which they rely heavily, involved a defendant sued for fraudulent conveyance who had *not* filed a proof of claim. Thus, Defendants' argument is unpersuasive. But even assuming, without deciding, that <u>Stern</u> applies to challenges to fraudulent conveyance actions, it is apparent that Defendants cannot demonstrate that they can overcome its two-prong test to determine whether a matter is constitutionally core.

Under <u>Stern</u>, a bankruptcy court may constitutionally determine a matter as a core proceeding if (1) the action stems from the bankruptcy itself *or* (2) the issue in question would "necessarily be resolved in" the claims allowance process. 131 S. Ct. at 2618. The court need not dwell on the first of these bases, because it is clear that the second is met: the Trustee's fraudulent transfer claims would necessarily be resolved in the claims allowance process because Defendants have each filed a proof of claim.

In <u>Stern</u>, the court's finding of unconstitutionality relied on the fact that the debtor-in-possession's claim was "a state law action . . . not necessarily resolvable by a ruling on the creditor's proof of claim in bankruptcy." 131 S. Ct. at 2611; <u>see</u> <u>Sundale, Ltd. v. Fla. Associates Capital Enter., LLC</u>, (<u>In re</u> <u>Sundale, Ltd.</u>), 499 F. App'x 887, 892-93 (11th Cir. 2012) ("[I]t must follow that a bankruptcy court would have jurisdiction to

15

enter final judgment on state law counterclaims that are necessarily resolved in the process of ruling on a creditor's proof of claim."). In the present cases, Defendants filed proofs of claim. This is fundamentally different from Granfinanciera, "where the bankruptcy estate reached out to file a fraudulent transfer claim against a party who had filed no claim against the estate." Onkyo Am. Inc. v. Global Technovations Inc. (In re Global Technovations Inc.), 694 F.3d 705, 722 (6th Cir. 2012). A proof of claim triggers the claims allowance process subject to resolution by the bankruptcy court. It has long been recognized that a creditor filing a proof of claim consents to entry of a final order as to that claim. Bryan v. Bernheimer, 181 U.S. 188, 197 (1901) (consent to summary jurisdiction by filing proof of claim).

Defendants argue that the determination of their proofs of claim cannot fully resolve the Trustee's fraudulent transfer claims. Asserting that their proofs of claim are for fraud against the Debtor and arose pre-petition, Defendants contend that the claims allowance process will determine how much the Debtor is indebted to them but will not include the Defendants' liability, if any, for payment of damages to the Trustee.

Defendants take too narrow a view. Unlike the tortious interference claim in Stern, which neither arose from nor

16

depended in any way on bankruptcy law,[6] avoidance actions under sections 544(b) and 548 are necessary to the claims-allowance process. Bankruptcy Code § 502(d) provides that "the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 544, . . . [or] 548 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . of this title." See, e.g., Dietz v. Spangenberg, No. 11-2600 ADM/JJG, 2013 WL 883464, at *5 (D. Minn. March 8, 2013) ("Moreover, [a defendant] has filed a proof of claim in [the] bankruptcy case, and so the Trustee's claim for preferential [section 547] and fraudulent transfers [section 548] against [this defendant] will necessarily be resolved in the claims allowance process."). Here, absent resolution of the Trustee's fraudulent conveyance claims, Defendants' claims will be disallowed.[7]

---

[6] In this regard, Defendants' reliance on In re Ortiz, 665 F.3d 906 (7th Cir. 2011), is misplaced. In Ortiz, the claimant filed a proof of claim related to medical care services rendered to the debtors while the debtors' counterclaim asserted that the creditor's disclosure of medical information in filing claims violated state law. The Seventh Circuit concluded that "[t]he debtors' claimed right to relief does not flow from a federal statutory scheme." 665 F.3d at 914 (citing Stern, 131 S. Ct. at 2614). In doing so, the court never referenced section 502(d).

[7] In Stern, the Court's only reference to section 502(d) was in its discussion of Katchen v. Landy, 382 U.S. 323 (1966), where the preferred creditor's claim in bankruptcy could be disallowed as a

17

Although Defendants argue that section 502(d) does not become operative until the trustee has a judgment allowing avoidance of a transfer, the plain language of the statute makes clear that Defendants' proofs of claim cannot be allowed until a determination of the fraudulent transfer claims has been made. See Kriegman v. Cooper (In re LLS America, LLC), Bankr. No. 09-06194-PCW11, 2012 WL 2564722, at *6 (Bankr. E.D. Wash. July 2, 2012) ("As part of the claims determination process, the bankruptcy court applies § 502(d). That section precludes the allowance of a claim by any entity which received a transfer which is voidable under 11 U.S.C. § 547 or 11 U.S.C. § 548 or other provisions of the Code. . . . It is axiomatic that in order to determine the validity, amount and treatment of a proof of claim, the bankruptcy court must determine whether an improper transfer has occurred."). The court concludes, therefore, that when a proof of claim has been filed in a bankruptcy case to which, as here, the trustee objects, a

result of the preference. 131 S. Ct. at 2616. The Court noted that in the case before it there was "never reason to believe that the process of ruling on Pierce's proof of claim would necessarily result in the resolution of Vickie's counterclaim." Id. at 2617. While preference claims play a somewhat different role than fraudulent transfer claims, section 502(d) applies to section 544 and 548 claims as well as section 547 claims. To be sure, in Stern the Court distinguished cases that involved preferences because they "in effect increase that creditor's proportionate share of the estate" and require a ruling before adjudicating the creditor's proof of claim. 131 S. Ct. at 2617. This language does not preclude fraudulent transfers from being part of the claims allowance process, however.

trustee's fraudulent transfer claims necessarily must be resolved in the claims allowance process. See 1-3 Collier on Bankruptcy ¶ 3.02[3][b] (16th ed. 2013) ("With respect to avoiding power counterclaims to a proof of claim, the majority in Stern appears to have been satisfied with the result in Katchen v. Landy, which held that because a claim cannot be allowed until the claimant has satisfied any avoiding power judgment, determining the cause of action is part and parcel of the allowance process." (footnote omitted) (also suggesting that the treatment of an avoiding power cause of action where the defendant has *not* filed a proof of claim may fundamentally be treated as a jury-trial right issue rather than one governed by Stern, "although it is not surprising that some post-Stern courts have treated the matter as one of authority")).

Defendants also urge withdrawal on the grounds they are entitled to a jury trial. The filing of a proof of claim has historically transformed a matter ordinarily legal in nature (to which the Seventh Amendment may provide a right to a jury trial) to one equitable in nature, that is, the allowance or disallowance of a claim. See Langenkamp v. Culp, 498 U.S. 42 (1992). Defendants have not identified anything in Stern that requires a contrary result in light of the court's resolution above. Compare Granfinanciera, 492 U.S. at 58-59) ("Because petitioners . . . have not filed claims against the estate,

19

respondent's fraudulent conveyance action does not arise 'as part of the process of allowance and disallowance of claims'" and they retain "their Seventh Amendment right to a trial by jury") <u>with</u> <u>Langenkamp</u>, 498 U.S. at 45 ("Respondents filed claims against the bankruptcy estate" and "[c]onsequently, they were not entitled to a jury trial"). Thus, Defendants' claim of a right to jury trial is unpersuasive.

Defendants finally argue that even if the Bankruptcy Court is constitutionally able to enter a final judgment on the Trustee's claims, permissive withdrawal of the reference under section 157(d) is warranted based on other factors traditionally considered by courts in determining a motion for permissive withdrawal.

A district court has broad discretion to determine whether to withdraw the reference upon a finding of "cause." <u>Millennium Studios, Inc. v. Man Roland, Inc.</u> (<u>In re Millennium Studios Inc.</u>), 286 B.R. 300, 303 (D. Md. 2002); <u>ACC Retail</u>, 2012 WL 8667572, at *1. "Cause" is not statutorily defined. Many courts considering motions to withdraw the reference in light of <u>Stern</u> do so by considering the factors generally applicable to permissive withdrawal. These include: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy proceedings; (3) expediting the bankruptcy process and promoting judicial economy; (4) the efficient use of the

20

resources of debtors and creditors; (5) reduction in forum shopping; and (6) the preservation of a right to a trial by jury (or likelihood of a jury trial). <u>In re U.S. Airways Group, Inc.</u>, 296 B.R. 673, 681-82 (E.D. Va. 2003) (citing circuit court opinions); <u>see</u> <u>Millennium Studios</u>, 286 B.R. at 303 (same). The determination is made on a case-by-case basis, after weighing all the factors. <u>U.S. Airways</u>, 296 B.R. at 682.

The first consideration is whether the matter is core or non-core. A finding that the claims are core "strongly militates against withdrawal of the reference." <u>Dwyer v. First Nat'l Bank</u>, (<u>In re O'Brien</u>), 414 B.R. 92, 98 (S.D.W. Va. 2009). The claims at issue here are core. Because the court has determined that the Bankruptcy Court has the power after <u>Stern</u> to adjudicate the proceeding, this factor weighs heavily against withdrawal. <u>See</u> <u>ACC Retail</u>, 2012 WL 8667572, at *2 (considering whether bankruptcy court had final power to adjudicate matter rather than whether matter was classified as core or noncore).

The remaining factors also disfavor withdrawal or are neutral. Uniformity of administration will be fostered by an initial determination by the Bankruptcy Court because, although state law claims are involved, the facts and issues to be determined are common with the bankruptcy proof of claim proceedings and, further, the Bankruptcy Court is familiar with fraudulent transfer proceedings generally. Judicial economy

21

will be enhanced by allowing the Bankruptcy Court to resolve the Trustee's objections to Defendants' proofs of claim in addition to resolving the fraudulent transfer claims. The Bankruptcy Court is in the best position to consider these issues together in the first instance. The forum selection factor is neutral here, and, as noted above, a right to a jury trial does not exist, so this factor weighs against withdrawing the reference.[8]

In short, none of Defendants' arguments for withdrawal is persuasive. Because Defendants have filed proofs of claim, the Trustee's fraudulent conveyance claims are constitutionally core and the Bankruptcy Court may resolve them. Defendants have not identified any other basis that warrants withdrawal. The court, therefore, will deny Defendants' motions to withdraw the reference.

## III. CONCLUSION

For the reasons set forth above, therefore,

IT IS ORDERED that Defendants' Joint Motion to Withdraw Reference to the United States Bankruptcy Court (Doc. 10 (12-cv-00525, 12-cv-00528, 12-cv-00529); Doc. 7 (12-cv-00531)) is

---

[8] Even a right to a jury trial does not require immediate withdrawal. See In re Stansbury Poplar Place, Inc., 13 F.3d 122, 128 (4th Cir. 1993) ("Our holding that bankruptcy judges are not authorized to conduct jury trials does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of jury selection and trial.").

DENIED, and the Bankruptcy Court shall proceed to final judgment
in the adversary proceedings.


                                        /s/    Thomas D. Schroeder
                                        United States District Judge

August 23, 2013